United States District Court
Southern District of Texas

**ENTERED**

August 04, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDGAR SPINOSO, INDIVIDUALLY AND | § | |
| AS PERSONAL REPRESENTATIVE OF | § | |
| THE ESTATE OF CARLOTA SPINOSO; | § | |
| ELVIA BESIL; and HAFFAM PROPERTIES, | § | |
| LLC., | § | |
| | § | |
| Plainiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-3482 |
| | § | |
| BLUE CROSS AND BLUE SHIELD OF | § | |
| TEXAS, A DIVISION OF HEALTH CARE | § | |
| SERVICE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending in this case that has been referred by the District Judge to the undersigned Magistrate

Judge for all pretrial proceedings is Defendant Health Care Service Corporation's Motion to Dismiss

Plaintiff's Amended Complaint (Document No. 17) and Defendant Health Care Service

Corporation's Motion to Strike Portions of An Affidavit and Certain Exhibits Attached to Plaintiff's

Response to Defendant's Motion to Dismiss (Document No. 19). Having considered those motions,

the responses, the parties' additional briefing, the claims and allegations in Plaintiffs' First Amended

Complaint (Document No. 16), and the applicable law, the Magistrate Judge, for the reasons set forth

below, ORDERS that Defendant's Motion to Strike is GRANTED in PART, and RECOMMENDS

that Defendant's Motion to Dismiss be GRANTED IN PART.

I.      **Background**

Edgar Spinoso and Elvia Besil, the surviving parents of Carlota Spinoso, along with Elvia Besil's employer, Haffan Properties, LLC, through which Besil obtained and had health insurance, filed this suit against Blue Cross and Blue Shield of Texas (BCBSTx) in state court after BCBSTx denied Plaintiffs' claims for reimbursement of the health care expenses incurred by and for Carlota Spinoso in Mexico between 2017 and 2018, prior to her death.  The case was removed to this Court on the basis of both diversity and federal question jurisdiction.  Within a week of the removal, BCBSTx filed a Rule 12(b)(6) Motion to Dismiss.  Plaintiffs were thereafter given leave to file an Amended Complaint.

In that Amended Complaint (Document No. 16), Plaintiffs allege that Elvia Basil, along with Carlota Spinoso, were in Mexico in mid-2017 when Carlota (then five years old) became ill.  She was diagnosed with cancer and treated in Mexico until her death in February 2018. At issue in this case is BCBSTx's denial of reimbursement claims submitted by Plaintiffs for Carlota's care while in Mexico.  BCBSTx denied those claims on the basis that they were not timely submitted.

Plaintiffs assert three claims: (1) for breach of contract; (2) for violations of the Texas Insurance Code; and (3) for ERISA benefits.  BCBSTx seeks an Order dismissing all of those claims. With respect to the breach of contract and Texas Insurance Code claims, BCBSTx argues that such claims are pre-empted by ERISA.  As for the ERISA benefits claim, BCBSTx argues that the contents of, and allegations in, Plaintiffs' First Amended Complaint render those claims implausible in light of Plaintiffs' failure to file the reimbursement claims within the ninety day period set forth in the Plan.  In response to the Motion to Dismiss, Plaintiffs argue that the BCBSTx has waived the application of ERISA through the references in plan documents and BCBSTx's explanation of

2

benefits correspondence to the application of Texas law.  Plaintiffs have also, as part of their Response, attached an Affidavit of Plaintiff Edgar Spinoso along with emails between him and customer service representatives of Blue Cross Blue Shield Global Core about Carlota's care and the medical expenses she was incurring for that care in Mexico.  It is these attachments BCBSTx seeks to strike as being beyond the pleadings and beyond what can be considered in a Rule 12(b)(6) context.  In addition, BCBSTx argues that even if the attachments are considered, nothing in those attachments evidences that Plaintiffs filed their reimbursement claims within 90 days of the service being provided, as required by the terms of the Plan.

## II.      Rule 12(b)(6) Standard of Review and Consideration of Matters Beyond the Pleadings

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)).  Plausibility, not sheer possibility or even

3

conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950. "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Covington v. City of Madisonville, Texas*, No. 18-20723, 2020 WL 2516661, at *4 (5th Cir. May 15, 2020). When matters beyond those are submitted, the Court may either exclude them, or convert the motion to dismiss into a motion for summary judgment. *Allen v. Hays*, No. 19-20360, 2020 WL 2182085, at *3 (5th Cir. May 5, 2020).

Here, the attachments BCBSTx seeks to strike, which were submitted with Plaintiffs' response to BCBSTx's Motion to Dismiss, contain information that is not directly tied to any of the allegations in Plaintiffs' Amended Complaint. In particular, as argued by BCBSTx, nowhere in Plaintiffs' First Amended Complaint are there allegations about Edgar Spinoso's contacts with Blue Cross Blue Shield Global Core personnel and nowhere are there allegations by Plaintiffs that they submitted claims to BCBSTx within 90 days of services being provided. With no relation to the allegations that <u>are</u> in the First Amended Complaint, BCBSTx asks that Edgar Spinoso's affidavit,

4

and the email exchanges attached thereto (Document No. 18-9), be stricken as outside of the Court's purview in a Rule 12(b)(6) context.

A close and careful review of the allegations in Plaintiffs' First Amended Complaint alongside the contents of Edgar Spinoso's affidavit and attached emails reveals some minimal references to the Blue Cross and Blue Shield Global Core program in the First Amended Complaint. First Amended Complaint (Document No. 16) at ¶ 26, 28, 29. Those bare references are not enough to render Spinoso's affidavit and the email attachments admissible for purposes of BCBSTx's Rule 12(b)(6) Motion to Dismiss. The affidavit and email attachments can, however, be considered for purposes of determining whether Plaintiffs should be given leave to amend. BCBSTx's Motion to Strike (Document No. 19) is therefore GRANTED in PART, and the contents of Spinoso's affidavit and attached email correspondence with Blue Cross Blue Shield Global Core (Document No. 18-9) will not be considered in determining whether Plaintiffs have stated a plausible claim against BCBSTx.

## III.    Discussion – State Law Claims

BCBSTx argues in its Motion to Dismiss that Plaintiffs' claims for breach of contract and violations of Chapter 541 of the Texas Insurance Code are preempted by ERISA because such claims seek the type of relief – reimbursement of their health care claims – that ERISA provides. While Plaintiffs argue, somewhat halfheartedly,[1] that BCBSTx "waived" the application of ERISA by and

---

[1] Plaintiffs argue that their state law claims are not preempted, but their argument is not based on the scope of ERISA preemption, but rather on Plaintiffs' position that BCBSTx waived the applicability of ERISA by mentioning Texas law. As set forth by BCBSTx in its Response and its Reply (Document No. 20), a defendant can waive ERISA preemption by failing to raise it in litigation, but parties cannot agree that state law will apply to ERISA plans and ERISA claims.

5

through the language in the Plan's Group Administration Document that states that disputes arising under the contract "shall be resolved in Texas under the laws of the state of Texas," because the First Amended Complaint makes it clear that the relief sought by Plaintiffs in connection with their state law claims is payment of the claims by the ERISA Plan, such claims are, for the reasons that follow, preempted and subject to dismissal.

State law claims that duplicate, supplement, or supplant the remedies available under ERISA are generally preempted. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). As is relevant to this case, "if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B)" and is preempted. *Id.* at 210.

There are two types of preemption: complete preemption and conflict preemption. Complete preemption exists when the state law claim at issue could have been brought under § 1132, ERISA's civil enforcement provision. *Gilmour v. Blue Cross & Blue Shield of Alabama*, No. 4:19-CV-160, 2020 WL 2813197, at *9 (E.D. Tex. May 29, 2020). Conflict preemption exists when the state law

---

*See Matter of HECI Expl. Co., Inc.*, 862 F.2d 513, 521 (5th Cir. 1988) ("Even if a party may, under some circumstances, waive the application of federal law to a federally preempted state law claim by failing to raise federal law in a timely fashion, *Dueringer*, 842 F.2d at 130, it would go too far to hold that parties could agree to apply state law to an ERISA claim. The principal reason for the breadth of ERISA preemption is to prevent the development of a competing line of cases decided under state law"); *Anderson v. Bus. Men's Assur. Co.*, No. CIV.A. 02-2212, 2003 WL 21305335, at *4 (E.D. La. June 5, 2003) ("Plaintiff's argument that the terms of the plan incorporate state law must fail. Various courts have found that parties may not stipulate or agree that state law will govern an ERISA claim, despite the fact that a provision of the contract may provide that state law is applicable or that the plan shall be administered in accordance with state law.").

claim at issue could not have been brought under § 1132, but the claim nonetheless "relates" to an

ERISA plan.  29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the

provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title

and not exempt under section 1003(b) of this title.").  Conflict preemption arises when: "1) the state

law claim addresses an area of exclusive federal concern, such as the right to receive benefits under

the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional

ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995).

Here, from the allegations in the First Amended Complaint, it is clear that Plaintiff's claims

for breach of contract and violations of the Texas Insurance Code seek reimbursement of the health

care costs incurred by and for Carlota Spinoso.  *See* First Amended Complaint (Document No. 16)

at 10, 11 ("Plaintiffs are entitled to reimbursement of their claims under the provisions of the

contract between the parties.").  Such claims are based on Plaintiffs' alleged entitlement to benefits

from an ERISA plan.[2]   Because this is not a case where Plaintiffs are seeking anything other than

payment under the Plan, Plaintiff's breach of contract claim falls within complete preemption, and

the insurance code claim falls within conflict preemption.  *See e.g., Hernandez v. Metro. Life Ins.

Co.*, No. 5:19-CV-37-DAE, 2019 WL 2563836, at *5 (W.D. Tex. Apr. 11, 2019) (finding, in a

dispute about life insurance benefits under an ERISA plan, that the plaintiff's breach of contract

claim was subject to complete preemption, and the Texas Insurance Code claims were subject to

---

[2] Plaintiffs do not dispute BCBSTx's representation in its Motion to Dismiss, or any of the supporting documentation, about the existence of an ERISA plan.  *See* Motion to Dismiss (Document No. 17) at 11-13.

conflict preemption);  In addition, because there is no merit to Plaintiffs' argument that BCBSTx

waived the application of ERISA by virtue of certain references in Plan documents to Texas law, *see*

*supra* note 1, the state law claims are subject to dismissal with prejudice as preempted.


V.      **Discussion – ERISA claim(s)**

        Relying on the following claims submission deadline in the Benefits Booklet,[3] BCBSTx

maintains that Plaintiffs' ERISA claim(s) for benefits should be dismissed:

        When to Submit Claims

        All claims for benefits under the Plan must be properly submitted within 90 days of
        the date you receive the services or supplies.  Claims not submitted and received by
        BCBSTX within twelve (12) months after that date will not be considered for
        payment of benefits except in the absence of legal capacity.

(Document No. 17-1) at 59.  According to BCBSTx, because Plaintiffs did not submit their claims

within the 90 day window mandated by the above provision of the Plan, and because Plaintiffs have

admitted in their pleadings that they did not meet this claims submission deadline, they have not, and

cannot, state a plausible claim for benefits under § 1132(a)(1)(B).

        To plead a plausible claims for ERISA benefits under § 1132(a)(1)(B), a plaintiff "need only

provide enough factual allegations in the complaint to demonstrate plausibility, and exclusion of

specific plan terms does not result in an automatic determination of implausibility."  *Price v. Life*

*Ins. Co. of N. Am.*, No. CV H-18-3900, 2019 WL 2716537, at *3 (S.D. Tex. June 28, 2019).  Here,

BCBSTx argues that Plaintiffs have not alleged a plausible claim for benefits under § 1132(a)(1)(B)

because they have not alleged that they submitted timely claims for benefits, and because the

_____

        [3] As asserted by BCBSTx, and not disputed by Plaintiffs, the Plan made up of a Group
Administration Document, the Benefit Program Application and Benefit Booklets.

allegations in their pleadings, including their First Amended Complaint, can be taken as admissions that they did not submit timely claims for benefits.  BCBSTx points, repeatedly, to paragraphs 13-39 of Plaintiffs' First Amended Complaint, as containing Plaintiffs' concession(s) that they did not comply with the "Plan's 90-day claim filing deadline."  *See* Reply in Support of Motion to Dismiss (Document No. 20) at pp. 2, 12; Reply in Support of Motion to Strike (Document No. 30) at pp. 4, 8, 10.

The allegations in paragraphs 13-39 of the First Amended Complaint are not, and cannot be construed as, admissions by Plaintiffs that they did not meet the 90-day claim submission deadline. Plaintiffs allege the following in paragraphs 13-39:

13.    The claim filing deadline pursuant to which Plaintiffs' claims for reimbursement was [sic] denied in this case is found in a "Benefit Booklet" issued by BCBS.  It provides that claims for "benefits" under "The Plan" must be filed within ninety days of the date the insured receives the services or supplies for which reimbursement is sought.  In the same paragraph the "Benefits Booklet" provides that claims not received by BCBS within 12 months of the date the services or supplies were received "will not be considered for payment of benefits except in the absence of legal capacity."

14.    The "Benefits Booklet" further provides that "No lawsuit or action in law or equity may be brought by you or on your behalf prior to the expiration of 60 days after Proof of Loss has been filed in accordance with the requirements of the Plan and no such action will be brought at all unless brought within three years from the expiration of the time within which Proof of Loss is required by the Plan."

15.    The "Benefits Booklet" defines the "Plan" as "a Group Managed Health Care and Pharmacy Benefits Contract" which has been issued by BCBS.

16.    The "Group Administration Document" states expressly that the "Plan" only applies in the State of Texas.

17.     Further, the Schedule of Coverage contained in the "Benefits Booklet" states that benefits under the plan comprise "Inpatient Hospital Expenses", "Medical/Surgical Expenses", "Extended Care Expenses", and "Special Provision Expenses".

18.     The "Benefit Booklet" provides that all capitalized terms in the "Booklet" have the meaning ascribed to them in the "Definitions" section.

19.     The "Benefits Booklet" defines "Inpatient Hospital Expenses" as items of service or supply furnished by a "Hospital" at the direction or on the prescription of a "Physician".

20.     A "Hospital" is defined as a short-term care facility which is a "duly licensed hospital by the state in which it is located and meets the standards established for such licensing, and is either accredited by the Joint Commission on the Accreditation of Healthcare Organizations or is certified as a Hospital provider under Medicare."

21.     A "Physician" is defined as "a person, when acting within the scope of his license, who is a Doctor of Medicine or a Doctor or a Doctor of Osteopathy. Doctor of Medicine and Doctor of Osteopathy shall have the meaning assigned to them by the Texas Insurance Code." *See Exhibit H, p. 73.* Doctor of Medicine and Doctor of Osteopathy under the Texas Insurance Code are practitioners "licensed to practice medicine by the Texas State Board of Medical Examiners." Tex. Ins. Code § 1451.001(15).

22.     All of the services and supplies for which reimbursement is sought were provided in Mexico by doctors and health care institutions that are not licensed by any state in the United States and are not approved by Medicare or accredited by the Joint Commission on the Accreditation of Health Care Organizations.

23.     The services for which Plaintiffs seek reimbursement are not, therefore, "Inpatient Hospital Expenses" or "Medical/Surgical" expenses as defined in the "Benefits Booklet".

24.     Because the services are not "benefits" under the "Plan" by the express terms of the Contract, the claim submission deadline in the Plan does not apply.

25.     Instead Plaintiffs seek recovery of expenses pursuant to provisions of the Group Administration Document, Exhibit A to the Amended Complaint, which is a part of the Contract between the parties.

26.    The Group Administration Document provides, at p. 21, that "If Participants are outside the United States[,] the Commonwealth of Puerto Rico, and the U.S. Virgin Islands (hereafter the "BlueCard Service Area") they may be able to take advantage of the Blue Cross Blue Shield Global Core when accessing covered healthcare services.)

27.    The terms "healthcare services" under this provision of the Contract is not a capitalized or defined term.

28.    The Group Administration Document goes on: " ...although Blue Cross Blue Shield Global Core assists Participants with accessing a network of inpatient, outpatient and professional providers, the network is not served by a Host Blue.  As such, when Participants receive care from providers outside the Blue Card service area, the Participants typically have to pay the providers and submit the claims themselves to obtain reimbursement."

29.    None of the terms in the Blue Cross Blue Shield Global Core coverage section are capitalized and, since none are provided by Hospitals or Physicians, they do not fall under the 90-day filing BCBS relied on to deny these reimbursement claims.

30.    The Group Administration Document under "General Provisions" section VI(B) provides: "This contract is issued in Texas.  All disputes arising under this Contract between BCBSTX and the Contract holder shall be resolved in Texas under the laws of the state of Texas."

31.    The "Benefits Booklet" directs insureds to obtain information or make a complaint to BCBS of Texas or to "contact the Texas Department of Insurance".

32.    The Employee Retirement Income Security Act specifically provides that state laws regulating insurance are not preempted.

33.    Chapter 541 of the Texas Insurance Code was enacted to regulate the business of insurance in the State of Texas.

34.    The Texas Insurance Code § 541.001 states that the purpose of the legislation [is] "to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined."

11

35.     The Supreme Court has enjoined the lower courts not to apply ERISA preemption mechanically, but to look to the purpose of the legislation to decide whether state laws should be preempted.

36.     State laws that further the purpose of ERISA should not be preempted under the Supreme Court's interpretation of ERISA preemption.

37.     Congress' purpose in enacting ERISA, as set out in 29 U.S.C. § 1001(b)(1) and 29 U.S.C. 1001(c)(3) was to increase the likelihood that **full benefits** will be paid to employees and beneficiaries.

38.     Defendant Blue Cross and Blue Shield of Texas is administered from offices located in Dallas, Texas.

39.     Claims administration for beneficiaries of Blue Cross and Blue Shield of Texas contracts of insurance is conducted out of offices in the State of Texas.

First Amended Complaint (Document No. 16) at 3-7.  Taking these allegations in a light most favorable to Plaintiffs, the undersigned cannot conclude that Plaintiffs have conceded or admitted that their claims were not submitted within ninety (90) days of the services provided.[4]  In addition, none of the explanations of benefits that were attached to Plaintiffs' First Amended Complaint (Document Nos. 16-2 through 16-7) indicate the date the claims were submitted; all that is reflected on those explanations of benefits are the dates of service and the dates the claims were processed. While it might be reasonable to assume that the claims were submitted close in time to the dates the

---

[4] In a Supplemental Memorandum (Document No. 25), BCBSTx maintains that even if Plaintiffs did not admit the untimeliness of their claims submissions in this case, they have made such admissions in a separate state court case they have filed against Plaintiffs' health insurance agent.  In that state court case, Plaintiffs allege that "Defendants failed to timely submit Carlota's medical expenses to Blue Cross Blue Shield."  BCBSTx maintains that the Court should take judicial notice of the allegations in that separate lawsuit, and conclude from those allegations, that Plaintiffs did not timely submit their claims to BCBSTx, and that Plaintiffs cannot cure, with an amendment, any deficiencies in the pleading of their ERISA benefits claim.  While the Court can take judicial notice of the contents of public documents, including pleadings in other cases, it would be inequitable to allow BCBSTx to both rely on allegations from that separate state court action and seek to prevent Plaintiffs from amending their pleading in this case.

claims were processed, particularly given the controlling regulations that require claims to be processed in relatively short order, *see* 29 C.F.R. § 2560.503-1, nothing in the explanation of benefits themselves or in any allegations in Plaintiffs' First Amended Complaint state as much, or provide a basis for the Court to so conclude.

That leaves BCBSTx's argument that it is for Plaintiffs to allege in their First Amended Complaint that they met the 90-day claims submission deadline, and their failure to include such an allegation renders their claim for benefits implausible and subject to dismissal. That argument is faulty for two reasons. First, other than BCBSTx's reliance on *Hollingshead v. Aetna Health, Inc.*, Civil Action No. 4:13-CV-231, 2014 WL 585397 (S.D. Tex. Feb. 13, 2014), there is no authority in this Circuit that would *require* a plaintiff seeking benefits from an ERISA plan to plead all the facts necessary for coverage and/or entitlement to benefits <u>*and*</u> all facts related to a plaintiff's compliance with the procedural requirements for seeking benefits. In addition, in *Hollingshead*, the Rule 12(b)(6) dismissal was based on the plaintiff's failure to allege that he complied with a condition of coverage *and* on the attachments to the Complaint which belied the plaintiff's allegation that his ERISA claims had been "immediately" denied. In the absence of clear authority that requires particularized pleading in ERISA cases of compliance with the claims submission provisions in the plan, the absence of allegations about the 90 day claims submission deadline does not, standing alone, render Plaintiffs' ERISA claim for benefits implausible. Second, the 90-day deadline relied upon by BCBSTx is akin to a defense or even an affirmative defense to Plaintiffs' ERISA claim for benefits. So construed, it would be for BCBSTx to allege facts in their Answer to support such a defense – not Plaintiffs' burden to allege facts to disprove that defense. *See e.g., Bennett v. Louisiana Health Serv. & Indem. Co.*, No. 19-185, 2020 WL 1536342, at *3 (M.D. La. Mar. 31,

2020) ("The exhaustion requirement is an 'affirmative defense'. Under Rule 12(b)(6), dismissal on the basis of an affirmative defense is only appropriate if 'an affirmative defense ... appears on the face of the complaint.' A plaintiff is not required to plead the negation of an affirmative defense."). The allegations in Plaintiffs' First Amended Complaint, taken in a light most favorable to Plaintiffs, do not by themselves prove or disprove BCBSTx's stance that benefits are not available because Plaintiffs did not submit timely claims for benefits. Plaintiffs' ERISA benefits claim is therefore not subject to dismissal as implausible.[5]

Such a plausibility determination would generally obviate the need for the Court to consider Plaintiffs' request for leave to amend. But, here, where the contents of Edgar Spinoso's affidavit and the attached emails address the timeliness issue raised by BCBSTx, and where Plaintiffs, in response to BCBSTx's Motion to Dismiss, seem to raise a new ERISA estoppel-type claim, the interests of efficiency and economy weigh in favor of allowing Plaintiffs, at this juncture, when the case is still relatively new, the opportunity to again amend their pleadings. Such an amendment would further one of the underlying purposes of ERISA, which is "to increase the likelihood that participants and

---

[5] Although not raised by either side in any of the briefing, the second sentence of the "When to Submit Claims" provision of the Plan seems incongruous with BCBSTx's argument that the 90-day deadline for submission of claims wholly defeats Plaintiffs' ERISA claim for benefits. As set forth above, the "When to Submit Claims" provision states:

> All claims for benefits under the Plan must be properly submitted within 90 days of the date you receive the services or supplies. Claims not submitted and received by BCBSTX within twelve (12) months after that date will not be considered for payment of benefits except in the absence of legal capacity.

The first sentence clearly states that claims must be submitted within 90 days of the date services or supplies were received. The second sentence seemingly alters or expands that 90 day period with its language that "[c]laims not submitted and received by BCBSTX within twelve (12) months *after that date* will not be considered for payment of benefits." Neither side has addressed this second sentence and what it seems to indicate – that the Plan *can* consider, for payment of benefits, claims submitted and received by BCBSTX within 12 months after the 90-day claims submission period has expired.

beneficiaries under employee benefit plans would 'receive their full benefits.'" *Thompson v. Avondale Indus., Inc.*, No. CIV.A. 99-3439, 2003 WL 359932, at *3 (E.D. La. Feb. 14, 2003) (citing 29 U.S .C. § 1001b(c)(3)).

## V.    Conclusion and Recommendation

Based on the foregoing and the conclusion that Plaintiffs' state law claims are preempted, but that it cannot be said, on this record, that the ERISA claim(s) for benefits is implausible, the Magistrate Judge

RECOMMENDS that Defendant's Motion to Dismiss (Document No. 17) be GRANTED in PART, and that Plaintiffs' state law breach of contract and insurance code violation claims be DISMISSED WITH PREJUDICE as preempted by ERISA.   Defendant's Motion to Strike (Document No. 19) is, for the reasons set forth above, GRANTED in PART.  Plaintiffs should be granted leave of Court to further amend their pleadings, if they so desire, within thirty days after the Court's ruling on Defendant's Motion to Dismiss.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.   Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), to the recommendation made herein relative to Defendant's Motion to Dismiss.   Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal.  *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The

15

original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this <u>4th</u> day of August, 2020.

Frances H. Stacy
United States Magistrate Judge

16